OA 91 Criminal Complaint

# United States District Court

**FILED**
JUN 3 0 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
DANIEL LEONARD GORDON, aka "BUTTER"

**CRIMINAL COMPLAINT**

Case Number: 4-08-70393

SEALED ORDER

4-08-70393

WDB

BZ

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about **June 9, 2008** in **Contra Costa** County, in the **Northern** District of **California** defendant(s) did,

(Track Statutory Language of Offense)

having previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, knowingly possess a firearm described as an EA Company Model J-15 .223 caliber rifle with serial number EA3143,

in violation of Title **18** United States Code, Section(s) **922(g)**

I further state that I am a(n) **Special Agent for the Federal Bureau of Investigation** and that this complaint is based on the following facts:

See attached affidavit

**NO BAIL ARREST WARRANT REQUESTED.**

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

Approved As To Form: James C. Mann, AUSA

Niliana Doss, Special Agent
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

June 30, 2008
Date

at San Francisco, California
City and State

Honorable Bernard Zimmerman   U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

Document No.
District Court
Criminal Case Processing

1 **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

2 I, Nitiana Doss, Special Agent of the Federal Bureau of Investigation, being duly sworn,
3 hereby declare as follows:

4 I.   **INTRODUCTION**

5 1.   I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have
6 been so employed since August 2005. Currently, I am assigned to the Violent Crimes and Major
7 Offender Squad at the Oakland Resident Agency, San Francisco Field Office, where my
8 responsibilities involve the investigation of gangs and narcotics. During my tenure in the FBI, I
9 have been involved in numerous investigations of gang-related narcotics traffickers, many of
10 whom often possess firearms. Several of the investigations have involved gangs and narcotics
11 traffickers in the area of Richmond, California, and several of the subjects of those investigations
12 have possessed firearms. I have participated in physical and electronic surveillance, undercover
13 narcotics transactions, executed search warrants, and reviewed recorded conversations of drug
14 traffickers. As a federal agent, I am authorized to investigate violations of the laws of the United
15 States and am a law enforcement officer with authority to execute warrants issued under the
16 authority of the United States.

17 II.  **PURPOSE OF THIS AFFIDAVIT**

18 2.   This affidavit is being submitted in support of a criminal complaint and arrest
19 warrant charging DANIEL LEONARD GORDON, aka "BUTTER" with being a felon in
20 possession of a firearm in violation of 18 U.S.C. § 922(g).

21 3.   Because this affidavit is being submitted for the limited purpose of securing a
22 criminal complaint and arrest warrant, I have not included each and every fact known to me
23 concerning this investigation. I have set forth only those facts that I believe are necessary to
24 establish probable cause to believe that, on or about June 9, 2008, DANIEL LEONARD
25 GORDON, who is a convicted felon, possessed a firearm - namely, an EA Company Model J-15,
26 .223 caliber rifle with serial number EA3143 - in violation of 18 U.S.C. § 922(g). The
27 statements contained in this affidavit are based on information provided to me by law
28 enforcement officers as well as my training, experience, and personal knowledge of this

1  investigation.

## III.   PROBABLE CAUSE

### A.   Criminal History Of DANIEL LEONARD GORDON.

4. I have reviewed a criminal history report for GORDON, which indicates that GORDON has the following prior felony convictions: (1) on January 14, 1993, GORDON was convicted of violating Penal Code §§ 460.2 (burglary, second degree), 487.1 (grand theft, property), and 496.1 (receiving stolen property); (2) on February 14, 1996, GORDON was convicted of violating Penal Code §§ 273.5 (infliction of corporal injury on spouse/cohabitant) and 460 (burglary); (3) on April 23, 1998, GORDON was convicted of violating Penal Code §§ 422 (threaten with intent to terrorize), 245(a)(1) (assault with a deadly weapon, not a firearm), 273.5 (infliction of corporal injury on spouse/cohabitant); (4) on February 8, 2001, GORDON was convicted of violating Penal § 460(b) (burglary, second degree); and (5) on April 9, 2007, GORDON was convicted of violating Health & Safety Code § 11377(a) (possession of a controlled substance).

### B.   Confidential Source.

5. The FBI and Contra Costa County Sheriff's Office ("CCCSO") are currently utilizing a confidential source ("CS") in our investigation of GORDON. I have reviewed a criminal history report for the CS, which reflects the following: on September 14, 2007, the CS was convicted of a felony violation of California Health & Safety Code § 11351.5 (possession of cocaine base for sale); and (2) on August 4, 2006, the CS was convicted of a misdemeanor violation of California Penal Code § 12280(b) (possession of an assault weapon). The CS was arrested for burglary in March 2005, taking a vehicle without consent, receiving stolen property, and possession of burglary tools in September 2005, and petty theft with a prior in June 2006. The CS was also arrested for violations of California Health & Safety Code § 11351.5 (possession of cocaine base for sale) on October 29, 2006, February 28, 2007, May 26, 2007, and April 23, 2008. The CS was arrested on October 25, 2006 for a violation of California Health & Safety Code § 11532(a) (loitering in a public place in connection with illegal drug activity); on January 15, 2007 for a violation of California Health & Safety Code § 11378 (possession of a

2

1  controlled substance for sale); and on October 20, 2007 for a violation of California Health &
2  Safety Code § 11359 (possession of marijuana for sale). Additionally, the CS was arrested on
3  December 20, 2007 for violations of California Penal Code §§ 245(a)(1) (assault with a deadly
4  weapon, not a firearm), 422 (threaten with intent to terrorize), 417(a)(1) (exhibition of a deadly
5  weapon, not a firearm), and 243(a) (battery on a person). The CS was arrested most recently on
6  May 20, 2008 for a violation of Penal Code § 69 (obstruction/resisting an executive officer); and
7  on June 5, 2008 for various narcotics-related offenses, including a violation of California Health
8  & Safety Code § 11351.5 (possession of cocaine base for sale), a violation of California Health &
9  Safety Code § 11352 (distribution of a controlled substance), and a violation of Penal Code §
10 186.22(a) (participation in a street gang). On several of the above-referenced occasions when the
11 CS was arrested for narcotics-related offenses, including on June 5, 2008, he/she was also
12 arrested for violations of Penal Code § 148(a) (obstruction/resisting a public officer).

13      6.    After the CS's arrest on June 5, 2008, he/she began cooperating with the FBI and
14 CCCSO. In exchange for the CS's cooperation, he/she was released from state custody following
15 his June 5, 2008 arrest. I believe the CS was cooperating in hopes of avoiding federal and state
16 narcotics-related charges in connection with the above-referenced arrests.

17      C.    **Background Information Provided By The CS.**

18      7.    On or about June 8, 2008, the CS told me that he/she has previously seen several
19 firearms, including an assault rifle, in GORDON's residence, which is an abandoned apartment
20 or home in North Richmond. According to the CS, GORDON maintains the firearms for various
21 individuals in the neighborhood.

22      D.    **Covert Video Of Assault Rifle In GORDON's Residence.**

23      8.    On or about June 9, 2008, at my direction, the CS went to GORDON's residence
24 to view the firearms stored there. I, along with Special Agent Doug Hunt and Detective Beltran,
25 searched the CS for contraband prior to the installation of a recording device on his/her person.
26 No contraband was found. We then dropped the CS off in North Richmond at approximately
27 5:45 p.m. Given the circumstances, we were unable to maintain surveillance of the CS. We
28 picked up the CS at approximately 6:17 p.m. in North Richmond. At that time, the CS told me

1  that he/she had observed an assault rifle stored at GORDON's residence.

2      9.    I reviewed the video and audio recorded from the recording device installed on the
3  CS prior to the controlled transaction.

4      a.    The recording shows the CS on foot approaching GORDON and another
5  male, who are in the driveway of a home. The CS and GORDON engage in casual conversation
6  about who is inside the home. The CS then enters the garage of the home through an open side
7  door; he/she then enters the home through a closed, but unlatched door between the garage and
8  the home. The CS walks through several of the rooms in the home and exits through the front
9  door. He/she encounters GORDON again outside, who appears to be going back into the
10 residence.

11     b.    Approximately 11 minutes later, the CS returns to the driveway of the
12 same home and engages in conversation with me via mobile telephone regarding the location of
13 the home and other matters. The CS then enters the garage through the same open side door
14 he/she had previously entered. He/she is greeted by an unidentified male standing at the open
15 door between the garage and the home itself. The CS enters the home and engages in a
16 conversation with GORDON, who appears to be preparing or eating food in the kitchen. The CS
17 asks GORDON about firearms located in the home, and GORDON directs the CS to look behind
18 the couch for the only firearm in the residence. The CS looks behind the couch and picks up
19 what appears to be a black AR-15 or similar assault rifle. GORDON states: "That's the only
20 one." The CS returns the firearm to its location behind the couch, walks through additional
21 rooms in the residence, and departs.

22     10.    Based upon the description provided by the CS, Detective Beltran drove by
23 GORDON's residence on or about June 9, 2008 and determined that the address was 1728
24 Giaramita Street, Richmond, California.

25     **E.**    **Search Of GORDON's Residence On Or About June 11, 2008.**

26     11.    On or about June 11, 2008, deputies from the CCCSO determined that GORDON
27 was on felony probation and responded to North Richmond to conduct a probation search. From
28 my review of police reports prepared by the CCCSO, I understand the following:

4

1  a.  A deputy stopped GORDON near Market Avenue and 7th Street in Richmond, California at approximately 6:26 p.m. on or about June 11, 2008. The deputy asked GORDON where he lived, and GORDON responded that he lived at 1728 Giaramita Street, Unit B and that he had been living there for over two months "with his girl and Big-D." The deputy handcuffed GORDON and informed him that a probation search of his residence was going to be conducted.

b.  During the search of GORDON's residence at 1728 Giaramita Street, Unit B, deputies recovered a black EA Company Model J-15, .223 caliber rifle with serial number EA3143, from behind the couch in the living room. The rifle had 27 rounds of ammunition in the magazine and one round in the chamber. A records check revealed that the rifle was stolen. In the northwest bedroom of the residence, deputies also found court paperwork bearing GORDON's name. In the northeast bedroom, deputies found a brown bag containing the following: (1) a 29-round, 9mm caliber, Glock magazine; (2) 10 loose rounds of .223 caliber ammunition; (3) a Lawman 9mm luger ammunition box with seven rounds of Speer ammunition in the box; (4) a Remington box with five loose rounds of .223 caliber ammunition and one loose round of 7.62x39 caliber ammunition; (5) two Remington boxes with 20 rounds each of .223 caliber ammunition of the same type that was loaded into the rifle recovered from the living room.

c.  During the probation search of GORDON's residence, the CCCSO encountered a male resident ("MALE") who was also on felony probation. The MALE stated that he had been living at the residence with GORDON and a female whom he identified ("FEMALE") for over two months; he stated that he lived in the southeast bedroom. He identified a second female that told him, GORDON, and the FEMALE that they could live in the residence because it was abandoned. The MALE admitted that he had smoked crystal methamphetamine earlier in the day. He further stated that he did not know anything about the gun or bullets found inside the residence and that he has never held any gun or bullets at the residence.

d.  The CCCSO also encountered the FEMALE, who stated that she had been

living at the residence for over three months with GORDON and the MALE. The FEMALE stated that the same female identified by the MALE told her the apartment was abandoned and she could live there. The FEMALE denied knowledge of the gun and bullets and stated: "All that should be in that house . . . is paraphernalia, no drugs."

  e. After recovering the rifle and bullets, a deputy asked GORDON what items belonged to him in the house. GORDON did not answer and asked: "What did you find?" The deputy asked, "whose gun was inside the house?" GORDON began to cry uncontrollably and yelled that it was not his. When asked if he had touched the gun, GORDON stated that he got up at 12:45 p.m. and walked into the backyard of the residence. He lifted up a mattress and found "the black AR-15 and a brown bag." He then opened the brown bag and saw numerous .223 caliber rounds in it. He stated that he then put the brown bag onto a shelf in the back bedroom where he was painting and pulling up carpet. And, he moved the AR-15 inside the house and placed it behind the couch because he did not want the owner to lose it. GORDON refused to name the owner of the gun.

  F. **Interstate Nexus Analysis Of The Rifle Recovered.**

  12. On or about June 27, 2008, I spoke with Mike Hamilton, an Inspector with the Bureau of Alcohol, Tobacco, Firearms & Explosives. He told me that based upon his research the EA Company Model J-15, .223 caliber rifle with serial number EA3143 was manufactured in Louisiana.

**IV. CONCLUSION**

  13. For the reasons stated above, I believe there is probable cause to believe that, on or about June 9, 2008, DANIEL LEONARD GORDON, who is a convicted felon, possessed a firearm - namely, an EA Company Model J-15, .223 caliber rifle with serial number EA3143 - in

////
////
////
////
////

6

1 violation of 18 U.S.C. § 922(g). I respectfully request that the Court issue the requested criminal
2 complaint and arrest warrant.

_____
Nitiana Doss
Special Agent, Federal Bureau of Investigation

Sworn to before me this
30 day of June 2008.

_____
HONORABLE BERNARD ZIMMERMAN
UNITED STATES MAGISTRATE JUDGE

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☑ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location: **NORTHERN DISTRICT OF CALIFORNIA**

### OFFENSE CHARGED
VIOLATION: 18 U.S.C. § 922(g).

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

### DEFENDANT - U.S.
► DANIEL LEONARD GORDON, aka "BUTTER"

DISTRICT COURT NUMBER

PENALTY:
(1) Imprisonment: Maximum 10 Years.
(2) Fine: $250,000
(3) Supervised release: Maximum 3-year Term
(4) Special assessment: $100.00

### PROCEEDING
Name of Complaintant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ►

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM: **JOSEPH P. RUSSONIELLO**
☑ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned): James C. Mann, AUSA

### DEFENDANT
**IS NOT IN CUSTODY**
1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ►
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges    ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of Institution
Contra Costa County

Has detainer been filed? ☐ Yes ☐ No    If "Yes" give date filed

DATE OF ARREST ► Month/Day/Year

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ► Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS
PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☑ WARRANT    Bail Amount: No bail.

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:
Before Judge:

Comments:

OA 91 Criminal Complaint

# United States District Court

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
v.
DANIEL LEONARD GORDON, aka "BUTTER"

**CRIMINAL COMPLAINT**

FILED
JUN 3 0 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case Number: 4-08-70393

WDB
BZ

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about June 9, 2008 in Contra Costa County, in the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

having previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, knowingly possess a firearm described as an EA Company Model J-15, .223 caliber rifle with serial number EA3143,

in violation of Title 18 United States Code, Section(s) 922(g)

I further state that I am a(n) Special Agent for the Federal Bureau of Investigation and that this complaint is based on the following facts:

See attached affidavit.

NO BAIL ARREST WARRANT REQUESTED.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Approved As To Form: James C. Mann AUSA

Nitiana Doss, Special Agent
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

June 30, 2008
Date

at San Francisco, California
City and State

Honorable Bernard Zimmerman    U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

Document No.
District Court
Criminal Case Processing

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nitiana Doss, Special Agent of the Federal Bureau of Investigation, being duly sworn, hereby declare as follows:

### I. INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since August 2005. Currently, I am assigned to the Violent Crimes and Major Offender Squad at the Oakland Resident Agency, San Francisco Field Office, where my responsibilities involve the investigation of gangs and narcotics. During my tenure in the FBI, I have been involved in numerous investigations of gang-related narcotics traffickers, many of whom often possess firearms. Several of the investigations have involved gangs and narcotics traffickers in the area of Richmond, California, and several of the subjects of those investigations have possessed firearms. I have participated in physical and electronic surveillance, undercover narcotics transactions, executed search warrants, and reviewed recorded conversations of drug traffickers. As a federal agent, I am authorized to investigate violations of the laws of the United States and am a law enforcement officer with authority to execute warrants issued under the authority of the United States.

### II. PURPOSE OF THIS AFFIDAVIT

2. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging DANIEL LEONARD GORDON, aka "BUTTER" with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

3. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that, on or about June 9, 2008, DANIEL LEONARD GORDON, who is a convicted felon, possessed a firearm - namely, an EA Company Model J-15, .223 caliber rifle with serial number EA3143 - in violation of 18 U.S.C. § 922(g). The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and personal knowledge of this

1 | investigation.

## III. PROBABLE CAUSE

### A. Criminal History Of DANIEL LEONARD GORDON.

4. I have reviewed a criminal history report for GORDON, which indicates that GORDON has the following prior felony convictions: (1) on January 14, 1993, GORDON was convicted of violating Penal Code §§ 460.2 (burglary, second degree), 487.1 (grand theft, property), and 496.1 (receiving stolen property); (2) on February 14, 1996, GORDON was convicted of violating Penal Code §§ 273.5 (infliction of corporal injury on spouse/cohabitant) and 460 (burglary); (3) on April 23, 1998, GORDON was convicted of violating Penal Code §§ 422 (threaten with intent to terrorize), 245(a)(1) (assault with a deadly weapon, not a firearm), 273.5 (infliction of corporal injury on spouse/cohabitant); (4) on February 8, 2001, GORDON was convicted of violating Penal § 460(b) (burglary, second degree); and (5) on April 9, 2007, GORDON was convicted of violating Health & Safety Code § 11377(a) (possession of a controlled substance).

### B. Confidential Source.

5. The FBI and Contra Costa County Sheriff's Office ("CCCSO") are currently utilizing a confidential source ("CS") in our investigation of GORDON. I have reviewed a criminal history report for the CS, which reflects the following: on September 14, 2007, the CS was convicted of a felony violation of California Health & Safety Code § 11351.5 (possession of cocaine base for sale); and (2) on August 4, 2006, the CS was convicted of a misdemeanor violation of California Penal Code § 12280(b) (possession of an assault weapon). The CS was arrested for burglary in March 2005, taking a vehicle without consent, receiving stolen property, and possession of burglary tools in September 2005, and petty theft with a prior in June 2006. The CS was also arrested for violations of California Health & Safety Code § 11351.5 (possession of cocaine base for sale) on October 29, 2006, February 28, 2007, May 26, 2007, and April 23, 2008. The CS was arrested on October 25, 2006 for a violation of California Health & Safety Code § 11532(a) (loitering in a public place in connection with illegal drug activity); on January 15, 2007 for a violation of California Health & Safety Code § 11378 (possession of a

2

1 controlled substance for sale); and on October 20, 2007 for a violation of California Health &
2 Safety Code § 11359 (possession of marijuana for sale). Additionally, the CS was arrested on
3 December 20, 2007 for violations of California Penal Code §§ 245(a)(1) (assault with a deadly
4 weapon, not a firearm), 422 (threaten with intent to terrorize), 417(a)(1) (exhibition of a deadly
5 weapon, not a firearm), and 243(a) (battery on a person). The CS was arrested most recently on
6 May 20, 2008 for a violation of Penal Code § 69 (obstruction/resisting an executive officer); and
7 on June 5, 2008 for various narcotics-related offenses, including a violation of California Health
8 & Safety Code § 11351.5 (possession of cocaine base for sale), a violation of California Health &
9 Safety Code § 11352 (distribution of a controlled substance), and a violation of Penal Code §
10 186.22(a) (participation in a street gang). On several of the above-referenced occasions when the
11 CS was arrested for narcotics-related offenses, including on June 5, 2008, he/she was also
12 arrested for violations of Penal Code § 148(a) (obstruction/resisting a public officer).

13   6.   After the CS's arrest on June 5, 2008, he/she began cooperating with the FBI and
14 CCCSO. In exchange for the CS's cooperation, he/she was released from state custody following
15 his June 5, 2008 arrest. I believe the CS was cooperating in hopes of avoiding federal and state
16 narcotics-related charges in connection with the above-referenced arrests.

17   C.   **Background Information Provided By The CS.**

18   7.   On or about June 8, 2008, the CS told me that he/she has previously seen several
19 firearms, including an assault rifle, in GORDON's residence, which is an abandoned apartment
20 or home in North Richmond. According to the CS, GORDON maintains the firearms for various
21 individuals in the neighborhood.

22   D.   **Covert Video Of Assault Rifle In GORDON's Residence.**

23   8.   On or about June 9, 2008, at my direction, the CS went to GORDON's residence
24 to view the firearms stored there. I, along with Special Agent Doug Hunt and Detective Beltran,
25 searched the CS for contraband prior to the installation of a recording device on his/her person.
26 No contraband was found. We then dropped the CS off in North Richmond at approximately
27 5:45 p.m. Given the circumstances, we were unable to maintain surveillance of the CS. We
28 picked up the CS at approximately 6:17 p.m. in North Richmond. At that time, the CS told me

3

that he/she had observed an assault rifle stored at GORDON's residence.

9. I reviewed the video and audio recorded from the recording device installed on the CS prior to the controlled transaction.

    a. The recording shows the CS on foot approaching GORDON and another male, who are in the driveway of a home. The CS and GORDON engage in casual conversation about who is inside the home. The CS then enters the garage of the home through an open side door; he/she then enters the home through a closed, but unlatched door between the garage and the home. The CS walks through several of the rooms in the home and exits through the front door. He/she encounters GORDON again outside, who appears to be going back into the residence.

    b. Approximately 11 minutes later, the CS returns to the driveway of the same home and engages in conversation with me via mobile telephone regarding the location of the home and other matters. The CS then enters the garage through the same open side door he/she had previously entered. He/she is greeted by an unidentified male standing at the open door between the garage and the home itself. The CS enters the home and engages in a conversation with GORDON, who appears to be preparing or eating food in the kitchen. The CS asks GORDON about firearms located in the home, and GORDON directs the CS to look behind the couch for the only firearm in the residence. The CS looks behind the couch and picks up what appears to be a black AR-15 or similar assault rifle. GORDON states: "That's the only one." The CS returns the firearm to its location behind the couch, walks through additional rooms in the residence, and departs.

10. Based upon the description provided by the CS, Detective Beltran drove by GORDON's residence on or about June 9, 2008 and determined that the address was 1728 Giaramita Street, Richmond, California.

E. **Search Of GORDON's Residence On Or About June 11, 2008.**

11. On or about June 11, 2008, deputies from the CCCSO determined that GORDON was on felony probation and responded to North Richmond to conduct a probation search. From my review of police reports prepared by the CCCSO, I understand the following:

4

1        a.      A deputy stopped GORDON near Market Avenue and 7th Street in
2 Richmond, California at approximately 6:26 p.m. on or about June 11, 2008. The deputy asked
3 GORDON where he lived, and GORDON responded that he lived at 1728 Giaramita Street, Unit
4 B and that he had been living there for over two months "with his girl and Big-D." The deputy
5 handcuffed GORDON and informed him that a probation search of his residence was going to be
6 conducted.
7        b.      During the search of GORDON's residence at 1728 Giaramita Street, Unit
8 B, deputies recovered a black EA Company Model J-15, .223 caliber rifle with serial number
9 EA3143, from behind the couch in the living room. The rifle had 27 rounds of ammunition in
10 the magazine and one round in the chamber. A records check revealed that the rifle was stolen.
11 In the northwest bedroom of the residence, deputies also found court paperwork bearing
12 GORDON's name. In the northeast bedroom, deputies found a brown bag containing the
13 following: (1) a 29-round, 9mm caliber, Glock magazine; (2) 10 loose rounds of .223 caliber
14 ammunition; (3) a Lawman 9mm luger ammunition box with seven rounds of Speer ammunition
15 in the box; (4) a Remington box with five loose rounds of .223 caliber ammunition and one loose
16 round of 7.62x39 caliber ammunition; (5) two Remington boxes with 20 rounds each of .223
17 caliber ammunition of the same type that was loaded into the rifle recovered from the living
18 room.
19       c.      During the probation search of GORDON's residence, the CCCSO
20 encountered a male resident ("MALE") who was also on felony probation. The MALE stated
21 that he had been living at the residence with GORDON and a female whom he identified
22 ("FEMALE") for over two months; he stated that he lived in the southeast bedroom. He
23 identified a second female that told him, GORDON, and the FEMALE that they could live in the
24 residence because it was abandoned. The MALE admitted that he had smoked crystal
25 methamphetamine earlier in the day. He further stated that he did not know anything about the
26 gun or bullets found inside the residence and that he has never held any gun or bullets at the
27 residence.
28       d.      The CCCSO also encountered the FEMALE, who stated that she had been

5

1  living at the residence for over three months with GORDON and the MALE. The FEMALE
2  stated that the same female identified by the MALE told her the apartment was abandoned and
3  she could live there. The FEMALE denied knowledge of the gun and bullets and stated: "All
4  that should be in that house . . . is paraphernalia, no drugs."
5       e.     After recovering the rifle and bullets, a deputy asked GORDON what
6  items belonged to him in the house. GORDON did not answer and asked: "What did you find?"
7  The deputy asked, "whose gun was inside the house?" GORDON began to cry uncontrollably
8  and yelled that it was not his. When asked if he had touched the gun, GORDON stated that he
9  got up at 12:45 p.m. and walked into the backyard of the residence. He lifted up a mattress and
10 found "the black AR-15 and a brown bag." He then opened the brown bag and saw numerous
11 .223 caliber rounds in it. He stated that he then put the brown bag onto a shelf in the back
12 bedroom where he was painting and pulling up carpet. And, he moved the AR-15 inside the
13 house and placed it behind the couch because he did not want the owner to lose it. GORDON
14 refused to name the owner of the gun.

   F.   **Interstate Nexus Analysis Of The Rifle Recovered.**

16    12.   On or about June 27, 2008, I spoke with Mike Hamilton, an Inspector with the
17 Bureau of Alcohol, Tobacco, Firearms & Explosives. He told me that based upon his research
18 the EA Company Model J-15, .223 caliber rifle with serial number EA3143 was manufactured in
19 Louisiana.

20 IV.  **CONCLUSION**

21    13.   For the reasons stated above, I believe there is probable cause to believe that, on
22 or about June 9, 2008, DANIEL LEONARD GORDON, who is a convicted felon, possessed a
23 firearm - namely, an EA Company Model J-15, .223 caliber rifle with serial number EA3143 - in
24 ////
25 ////
26 ////
27 ////
28 ////

6

1  violation of 18 U.S.C. § 922(g). I respectfully request that the Court issue the requested criminal
2  complaint and arrest warrant.

_____
Nitiana Doss
Special Agent, Federal Bureau of Investigation

Sworn to before me this
30 day of June 2008.

_____
HONORABLE BERNARD ZIMMERMAN
UNITED STATES MAGISTRATE JUDGE

7

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☑ COMPLAINT  ☐ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

--- OFFENSE CHARGED ---

VIOLATION: 18 U.S.C. § 922(g).

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

PENALTY:
(1) Imprisonment: Maximum 10 Years.
(2) Fine: $250,000
(3) Supervised release: Maximum 3-year Term
(4) Special assessment: $100.00

--- PROCEEDING ---

Name of Complaintant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:   ☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM  JOSEPH P. RUSSONIELLO
☑ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)  James C. Mann, AUSA

--- Name of District Court, and/or Judge/Magistrate Location ---
NORTHERN DISTRICT OF CALIFORNIA

--- DEFENDANT - U.S. ---

▶ DANIEL LEONARD GORDON, aka "BUTTER"

DISTRICT COURT NUMBER

--- DEFENDANT ---

IS NOT IN CUSTODY
1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges   } ☐ Fed'l  ☐ State

If answer to (6) is "Yes", show name of Institution
Contra Costa County

Has detainer been filed?  ☐ Yes  ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

--- ADDITIONAL INFORMATION OR COMMENTS ---

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☑ WARRANT   Bail Amount: No bail.

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:
Before Judge:

Comments: